IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ronald Alexander Isgett, Jr., | ) | Case No. 8:11-CV-02783-CMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| v. | ) | |
| | ) | |
| Kenny Boone, as representative for the | ) | |
| Office of the Florence County Sheriff's | ) | |
| Office; Officer Travis Taylor; Officer | ) | |
| Xederick Hall; and Sergeant Robin | ) | |
| Flemming, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by
Defendants. [Doc. 32.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local
Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial
matters in cases filed under 42 U.S.C. § 1983 and to submit findings and
recommendations to the District Court.

Plaintiff filed this action in state court on September 14, 2011 against Defendants
Kenny Boone ("Boone"), Officer Travis Taylor ("Taylor"), Officer Xederick Hall ("Hall"), and
Sergeant Robin Flemming ("Flemming") (collectively, "Defendants"). [Doc. 1-1.]
Defendants removed the action on October 12, 2011 [Doc. 1] and filed a motion for
summary judgment on July 2, 2012 [Doc. 32]. On July 19, 2012, Plaintiff filed a response
in opposition to Defendants' motion. [Doc. 36.] On July 30, 2012, Defendants filed a reply.
[Doc. 39.] The motion is now ripe for review.

## BACKGROUND

Plaintiff, who was a pretrial detainee at the Florence County Detention Center ("FCDC") at all times relevant to this action, filed this action under 42 U.S.C. § 1983,[1] generally alleging Taylor, Hall, and/or Flemming used excessive force while attempting to restrain Plaintiff and that Boone and Flemming negligently supervised Taylor and Hall. [Doc. 1-1.] Plaintiff was booked into FCDC on September 15, 2009. [Doc. 1-1 at 5 ¶ 5.] Plaintiff alleges he became agitated while incarcerated because he was not given his medication to control pain and anxiety. [Doc. 1-1 at 5 ¶¶ 6–8.] As a result, Plaintiff began acting out and officers had to restrain Plaintiff and subject him to a taser. [Doc. 1-1 at 5 ¶ 9.] While being restrained, Plaintiff was struck multiple times with a closed fist on his face. [Doc. 1-1 at 6 ¶ 10.] Plaintiff alleges he was released on September 16, 2009 with a broken jaw. [Doc. 1-1 at 6 ¶ 12.] Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other relief as the Court deems just and proper. [Doc. 1-1 at 9.]

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

---

[1]The Complaint also mentions the South Carolina Tort Claims Act ("SCTCA"). [Doc. 1-1 at 4 (stating Boone "is statutorily liable for the acts and omissions of the deputies acting in the course and scope of their official duties pursuant to the South Carolina Tort Claims Act"), 5 (stating Plaintiff "brings his state claims pursuant to the South Carolina Tort Claims Act of S.C. Cod[e] Ann. § 1-78-10 et seq.")]. However, none of the causes of action refer to the SCTCA; instead, they are brought under 42 U.S.C. § 1983. [*Id.* at 6–9.] Accordingly, the Court declines to address the SCTCA.

2

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v.*

3

*Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

4

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

5

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Exhaustion of Administrative Remedies**

Defendants argue they are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies before filing this action.  [Doc. 32 at 6–7.] The Court disagrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

6

and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the South Carolina Department of Corrections ("SCDC") grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment

7

asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

Plaintiff argues he was not required to exhaust administrative remedies before filing this action because he was not a prisoner at the time the action was filed. [Doc. 36 at 3–5.] This District has agreed with the great weight of authority holding the exhaustion requirement does not apply to suits filed by former prisoners. *Wilson v. Hampton County*, No. 9:05-1777-PMD, 2005 WL 2877725, at *3 (D.S.C. Oct. 31, 2005) ("[I]n light of both the statutory language and the relevant case law from other circuits, the Court holds that the exhaustion-of-remedies requirement in the PLRA does not apply to plaintiffs who file § 1983 actions after being released from prison."); *see also Randolph v. State*, 74 F. Supp. 2d 537, 541 (D. Md. 1999) (holding the plaintiff was not a "prisoner" as defined by the PLRA when he filed suit). Accordingly, Defendants are not entitled to summary judgment for Plaintiff's failure to exhaust administrative remedies.

8

**Eleventh Amendment Immunity**

The Eleventh Amendment prohibits federal courts from entertaining an action against a state.  *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890).  Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983.  *Id.*  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Supervisory Liability**

To the extent Plaintiff bases his claims against Boone and Flemming on the theory of supervisory liability, his claims are without merit.  Because the doctrine of respondeat superior does not apply to § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to

9

establish supervisory liability under § 1983).[2]  A plaintiff must establish three elements to

prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge
> that his subordinate was engaged in conduct that posed "a
> pervasive and unreasonable risk" of constitutional injury to
> citizens like the plaintiff; (2) that the supervisor's response to
> that knowledge was so inadequate as to show "deliberate
> indifference to or tacit authorization of the alleged offensive
> practices[]"; and (3) that there was an "affirmative causal link"
> between the supervisor's inaction and the particular
> constitutional injury suffered by the plaintiff.[3]

*Id.* (citations omitted).

Here, Plaintiff has failed to establish a § 1983 claim against Boone or Flemming

based on a theory of supervisory liability because Plaintiff has failed to establish that

Boone or Fleming had actual or constructive knowledge of subordinates engaging in

---

[2]Such liability "is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984)).

[3] Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the
> plaintiff to a deprivation of his constitutional rights or has caused the conduct
> complained of or participated in some manner in the allegedly unlawful
> actions of his employee or subordinate officer, this Court has held a
> complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)).  A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), may have entirely abrogated supervisory liability in *Bivens* actions.  *See Ashcroft*, 129 S. Ct. at 1957 (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.  The nature of a supervisory liability theory is that the supervisor *may* be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010).  A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'"  *Id.* at 1948 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)).  Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.

pervasive or widespread conduct that posed a risk of injury to detainees like Plaintiff. Rather, Plaintiff's claim is based on a single, isolated incident, which is insufficient to establish supervisory liability.  *See Anderson v. Davies*, No. 3:10-2481-CMC-JRM, 2012 WL 1038663, at *2 (D.S.C. Mar. 8, 2012) ("'A pervasive risk of harm (under this principle) may not ordinarily be shown by pointing to a single incident or isolated incidents,' nor is a '(s)howing that individual officers violated a person's constitutional rights on an isolated occasion . . . sufficient to raise an issue of fact whether adequate training and procedures were provided.'" (internal citations omitted) (alterations in original)).  The Complaint contains no specific allegations against Boone except that he is a representative of the Florence County Sheriff's Department.  [Doc. 1-1 at 4 ¶ 2.]  As to Flemming, although she was present while Plaintiff was being restrained [*see* Doc. 32-5 at 20–21 (Incident Report)], there is no evidence that a policy or custom caused the injuries Plaintiff alleges he sustained.  Further, there is no evidence in the record of "documented widespread abuses," which are necessary to state a supervisory liability claim.  Therefore, Boone and Flemming are entitled to summary judgment on any claims brought against them under a theory of supervisory liability.

**Qualified Immunity**

Defendants argue they are entitled to qualified immunity. [Doc. 32-1 at 12–14.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual

constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Here, Plaintiff alleges Defendants violated his constitutional rights by using excessive force when restraining him, resulting in his broken jaw. To determine whether Defendants are entitled to qualified immunity, the Court must determine whether Defendants acted with objective reasonableness when restraining Plaintiff.

### Excessive Force Standard

Excessive force claims raised by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment.[4] *Orem v. Rephann*, 523 F.3d 442, 446 (4th

---

[4] Although the Complaint appears to allege the excessive force claims as Fourth Amendment claims [*see* Doc. 1-1 at 6–7 (listing causes of action against Taylor, Hall, and Flemming as Fourth Amendment claims for using excessive force)], broadly speaking, "the Fourth Amendment only governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person," while the Due Process Clause of the Fourteenth Amendment governs excessive force claims made by a "pretrial detainee or arrestee." *Orem*, 523 F.3d at 446 (citations, quotation marks and alterations omitted); *see also Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 268 (4th Cir. 2002) ("Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply." (citation omitted)). The distinction is material because, while the Court evaluates officer conduct against an "objective reasonableness" standard for Fourth Amendment claims, as discussed below, the Court applies a subjective standard to Fourteenth Amendment claims, considering whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Young v. Prince George's Cnty., Md.*, 355 F.3d 751, 758–59 (4th Cir. 2004).

Cir. 2008).  When analyzing such a claim, "[t]he proper inquiry is whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1991)), *abrogated on other grounds by Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178–79.  When evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response.  *Hudson v. McMillian*, 503 U.S. 1, 7 (citations omitted).

### *Analysis*

Here, Plaintiff admits he was disobedient, disruptive, a danger to himself, and noncompliant with commands by assaulting officers by spitting on them and resisting restraint by kicking and struggling to get out of a restraint chair.  [Doc. 32-2 at 4, 6, 8, 14–18.]  These admitted behaviors necessitated the application of force.  Plaintiff does not appear to challenge the use of the restraint chair or the taser [*see* Doc. 1-1 at 6–7 (causes of action against Taylor, Hall, and Flemming, focusing on "striking [Plaintiff] with a closed fist to his face and otherwise restraining the Plaintiff's face without due care"]; accordingly, the Court focuses its analysis on the use of force Plaintiff alleges was unconstitutional after he was in the restraint chair.[5]  Plaintiff concedes he spit on an officer after being placed in

---

[5]How Plaintiff ended up in the restraint chair is in dispute.  According to FCDC records and the testimony of Taylor, Hall, and Flemming, Flemming was notified Plaintiff was being disruptive in his cell and there was blood in the cell.  [Doc. 32-4 at 11–12.]  Flemming asked Hall and Taylor to assist her with Plaintiff.  [Doc. 32-3 at 7.]  They went to the cell and heard yelling and banging on the door.  [Doc. 32-4 at 12.]  Hall saw blood in the cell and saw Plaintiff running into the wall of the cell and hitting his head on the wall.  [*Id.*]  Before opening the cell, Flemming tried to talk to Plaintiff to get him to calm down, but he was not listening.  [*Id.* at 13.]  Flemming also directed Plaintiff to put his hands through the flaps to get handcuffed so that they could

the restraint chair. [Doc. 32-2 at 15, 17–18.] In response, according to the Incident

Report, Taylor used his cupped hand to turn Plaintiff's face, and a spit mask was placed

on Plaintiff's face.[6] [Doc. 32-5 at 20–21.] When Plaintiff continued to kick during the

attempt to utilize the restraint chair, Hall touch-tased Plaintiff once in the right shoulder

and, thereafter, the officers were able to fully restrain Plaintiff.[7] [Doc. 32-5 at 14, 20–21.]

Although Plaintiff testified he was punched two or three times in the face, on the right side

of his jaw and over the right eye [Doc. 32-2 at 11, 23–24], there is no evidence other than

Plaintiff's own allegations about being punched.[8] Based on the Incident Report created on

---

open the door. [Doc. 32-3 at 7.] Plaintiff refused to comply. [*Id.*] The cell door was opened, and Plaintiff attempted to charge out but was stopped by Hall and Taylor. [*Id.* at 9.] Hall and Taylor placed Plaintiff in the restraint chair and began fastening the restraints. [*Id.*]

Plaintiff has offered conflicting testimony as to how he got in the restraint chair. First, he testified that an officer—a captain or a sergeant, someone with two stripes on his sleeve—entered Plaintiff's cell, grabbed Plaintiff, and "told him to 'Shut the Hell up.'" [Doc. 32-2 at 7, 13.] Plaintiff continued to yell and then the officer revoked Plaintiff's PR bond. [*Id.* at 8.] The officer returned later that night and sprayed Plaintiff with mace [*id.* at 7, 9, 21] and then shocked him "thirteen or 14 times" with a taser on his right shoulder [*id.* at 9–10, 21]. Plaintiff avers he was punched two or three times in the face, on the right side of his jaw and over his right eye. [*Id.* at 11, 23–24.] As a result, Plaintiff was "knocked out" and "on the ground." [*Id.* at 11, 23.] He testified that when he came to, he was "in that chair." [*Id.* at 12.] He was dressed in pants at this point and had been naked when the assault had taken place. [*Id.*] According to this testimony, Plaintiff was "knocked out" when he was placed in the chair. However, he later testified that he voluntarily sat in the chair when an officer asked him to do so. [*Id.* at 14–15.]

For purposes of this analysis, because Plaintiff does not challenge the use of the restraint chair itself, these factual disputes do not create issues of *material* fact.

[6]Plaintiff testified he never had a spit mask on his face. [Doc. 32-2 at 17.] Accordingly, he does not challenge the use of a spit mask.

[7]Plaintiff has offered conflicting testimony regarding the number of times the taser was used on him. At some points, he testified he was shocked thirteen or fourteen times. [Doc. 32-2 at 9–10, 21.] However, elsewhere, he testified, "He shoot it one time." [*Id.* at 22.] Plaintiff's father testified Plaintiff probably got the numbers thirteen and fourteen from when he counted the pictures Plaintiff's father took. [Doc. 37-1 at 21.]

[8]It is difficult to determine from the deposition excerpts before the Court, but Plaintiff may be alleging that an unidentified officer later returned to Plaintiff's cell alone and punched Plaintiff at that time. However, there is no evidence other than Plaintiff's own allegations to establish an officer later returned to Plaintiff's cell and punched him. Additionally, to the extent Plaintiff is alleging an officer returned later to Plaintiff's cell, Plaintiff is unable to identify who returned, only that it was a male captain or sergeant. [Doc. 32-2 at 7, 13 (indicating Plaintiff only knew it was an African-American male who was a captain or a sergeant with two stripes on his sleeve).] The excessive force claims in this case are brought against Taylor, who was an officer in 2009 and had no insignia on the side of his shirt [Doc. 32-5 at 16], Hall, who was an officer in September 2009 and had no insignia on the side of his shirt [Doc. 32-4 at 7, 20], and Flemming, who was a sergeant in

the date of the incident, the force applied to Plaintiff's face was a cupped hand to turn Plaintiff's face after he spit on an officer. Taking into consideration the *Hudson* factors for evaluating whether the use of force was wanton or unnecessary, the Court finds Defendants acted with the objective reasonableness necessary to entitle them to qualified immunity given the circumstances under which the officers were restraining Plaintiff where he admits he was kicking the cell door, struggling to get out of the restraint chair, and spitting on the officers.[9] Because the Court concludes Defendants acted with objective reasonableness under the circumstances, Defendants are entitled to qualified immunity.[10]

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 1, 2013
Greenville, South Carolina

---

September 2009 [Doc. 32-3 at 4] but is female. Moreover, the Complaint appears to address only the force used while the officers were restraining Plaintiff after he was admittedly acting out.

[9]Plaintiff argues the Court cannot ignore the severity of Plaintiff's injury, a broken jaw. [Doc. 36 at 7.] In the present case, even though Plaintiff's jaw was broken, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendants acted with the objective reasonableness necessary to entitle them to qualified immunity. *See Epting v. Shelton*, No. 9:05-2257-CMC-GCK, 2006 WL 3802200, at *5 (D.S.C. Dec. 21, 2006) (holding that use of force in placing shackles on a pretrial detainee was reasonable, appropriate, and constitutionally permissible even where the detainee's ankle was broken).

[10]The Court declines to address Defendants' argument that this is one of those rare cases where the Court should weigh Plaintiff's credibility at the summary judgment stage. [Doc. 32-1 at 21–23.] Although the Court is aware Plaintiff's own testimony is contradictory at times, as stated above, the Court need not address this argument because, even without assessing Plaintiff's credibility, the Court recommends granting summary judgment because Defendants are entitled to qualified immunity.

16